Where do you live, Sweet Queen? The United States Court of Appeals for the Ninth Circuit is now in session.  Good morning. Welcome to the Ninth Circuit Court of Appeals. Welcome to Pasadena. This is the time set for the avant-garde argument in the case of Mackenzie L.E. Alfred v. Merrick v. Garland. If the parties are ready to proceed, you may begin. Good morning, Your Honors. Aaron Cortlice with the Northwest Immigrant Rights Project. On behalf of Petitioner Mackenzie Alfred, I'd like to reserve five minutes of my time for rebuttal. The state of Washington has made it easier to convict accomplices to robbery in comparison to other states and in comparison to federal law. Unlike most other states and unlike under federal law, Washington requires only general knowledge. Whereas in nearly all other jurisdictions in the United States, specific intent is required to be an accomplice. Now this decision has consequences. It makes it easier for prosecutors in Washington to convict accomplices. But for immigration purposes, it renders Mr. Alfred's offenses overbroad. The Supreme Court explained in Cuenca Alfrez v. Gonzales that this court must consider an argument that accomplice liability renders an offense overbroad. And here what that means is that because Washington requires only knowledge, whereas federal law and nearly all the other states require specific intent, Washington's robbery offenses are overbroad. Now this mismatch in elements alone is sufficient to resolve this case and the court should end the inquiry there. Counsel, I want to start with the premise. So what tells us that Washington requires only general knowledge and that the generic rule is specific intent? As I read in Roseman, let me just say that in Roseman, in Justice Kagan's discussion of intent, the word knowing or knowingly or knowledge or knows, those words appear throughout that opinion. So I'm not sure how that convinces me. One, that the federal statute is specific intent and that Washington is inconsistent with that and only requires general intent. Let me start with federal accomplice liability and Roseman, Your Honor. So in Roseman, of course, the Supreme Court held that you do have to have an intent to facilitate the crime. Now, Your Honor's right. Yes, the court discusses knowledge. And in discussing knowledge, what the court says is that to show that specific intent, you have to have full knowledge of all of the circumstances of the crime. The court says, too, that that has to be advanced knowledge of the crime. And not only that, in another part of the opinion, too, the Supreme Court says that what an accomplice needs under federal law, and these are all basically direct quotes from the opinion, you need specific intent as to the full scope of the crime. But could Roseman have simply been decided on the sufficiency of the evidence claim? I'm not quite sure what Your Honor's getting at there. But there was not sufficient evidence that Roseman knew that a gun was going to be used in the drug deal. That is true, and I think that is the holding of Roseman, right, that the individual didn't have advanced knowledge about the weapon, and for that reason he couldn't be an accomplice to the 924C charge there. But that's a direct contrast to what Washington requires, and I think this goes to Your Honor's second question. In Roberts, which is, I would say, the foundational Washington Supreme Court decision on what state accomplice liability requires, the Washington Supreme Court held that you do not have to have specific knowledge as to all of the elements of the crime. Now, already there, we see a significant gap, I would say, between what Roseman requires and what Roberts and Washington accomplice liability requires. The one is full knowledge of all of the entire circumstances of the crime. The second, Roberts-Washington, you don't have to have specific knowledge as to all of the elements of the crime. I think the government argues that you must not only show that the Washington statute's language is overbroad, but it also has been applied in a way that is overbroad. Do you agree with that? We do not agree with that, Your Honor. Can you cite any cases where it has been applied in a manner that is broader than the federal definition? So, responding to the second question, yes. There are several cases in which Washington is applied in an overbroad way. I think one of the best examples of that is the Davis case from the Washington Supreme Court. There, and it's a direct contrast to Roseman, the Washington Supreme Court said that you do not have to have, or that an accomplice didn't need to know about the weapon in a robbery offense, and that notwithstanding their lack of knowledge about that, they could still be held liable for the robbery. That already is an excellent example of the contrast between Roseman, which requires the exact opposite, and Washington law. And Davis isn't the only case. So, another good example is Randall. Randall's a burglary decision from the Washington Court of Appeals. There, two, three boys burglarized a house as they came out. They were caught by the police. And one of the accomplices said, I didn't know that the principal here had a gun. And nevertheless, the Washington Court of Appeals said, that doesn't matter because in this state, you don't have to have knowledge as to all of the circumstances of the crime. Absolutely. If your case involved, if your client had been convicted of armed robbery, maybe there would be something more to that. But in your particular case, there's no add-on. There's no adjective in front of the robbery. And Roseman did split those out. So, why should we decide this case narrowly? What's the problem in your particular case? So, I think additional cases may allay those concerns, Your Honor, from Washington. And I would say, going briefly to Roseman, I think what Roseman is holding, though, is that you do have to have knowledge as to all of these elements of the crime, right? Not just the armed offense portion, but the other things, too. The underlying offense, right, which was a drug trafficking offense, I believe, there. And in Washington, so this principle that I've been citing about not needing to know certain elements of the offense doesn't just apply to add-ons. Another good example is the Awend case. So, in Awend, the accomplices were charged with theft of a firearm. Firearm, of course, being a basic element of the offense. And the Washington Court of Appeals said, because in this state you don't need specific knowledge of all of the elements of the crime, you didn't have to know about that firearm or didn't have to have specific intent to steal that firearm. You're still liable as an accomplice. So, there's another example. When we're talking about non-generic applications and all these Washington cases, do you not also have the ability, under the threshold of reasonable probability, to just look at a pure mismatch? I absolutely agree, Your Honor. And I think that gets to Judge Callahan's question earlier, too. I think the inquiry can end there in this case. And, in fact, the Supreme Court held that just this term it rejected the government's argument, which in Taylor, from just this term, the government said you have to identify a case, which, of course, is the exact same argument as the government makes here. And in response to that, Justice Gorsuch said, no, that rationale doesn't apply in cases where there's explicit overbreak between the statute of conviction and the federal generic or the federal statutory crime. So, where the elements don't match in the first instance, there's no reason to get to the second step. And, notably, the Supreme Court has applied that same rationale in cases involving mens rea, like this one. So, the Borden decision from 2021 is a perfect example of that. There, the crime of violence, or the court held that a crime of violence needs a knowing or purposeful mens rea. As a result, state crimes with a recklessness mens rea don't count. And the Supreme Court ended the inquiry there. At that point, it demonstrated that the state offense, the Tennessee offense, was overbroad compared to the crime of violence definition. Let me ask you one more question about Washington law. You cited the Jackson case. And it has a curious comment because it repeats the statutory language. But then it says, after citing the statutory language, it says, in other words, she must associate with the undertaking, participate in it as something she desires to bring about, and seeks by her action to make it succeed. But she recognizes the classic clear-in-hand formulation. Why does that not cast further doubt on the notion that there's really much daylight between Rosemont's and Washington's concept, despite the difference in wording in the statute? I think, Your Honor, that case can't be read apart from cases particularly like Roberts, because I think Roberts is the case that's cited time and time again in lower court decisions. The Washington Supreme Court reaffirmed it in cases like Cronin, saying this is the standard. So I'm saying — But Rosemont, I mean, suggests there's not a lot of daylight functionally between a knowledge requirement and an intent requirement. And I don't see where, in the published Washington case law, they're finding that space between those two concepts. Well, so first of all, I think all of the cases that I have cited demonstrate that daylight because there's such explicit contrast with Rosemont. And I would say, too, that what Rosemont is saying isn't — I don't think Rosemont can be read to say knowledge isn't enough. It's saying you need advanced knowledge, that knowledge has to go to all of the elements of the crime. And that's how you show specific intent. You need to present all the elements. So, I mean, if you're charged with aiding and abetting a bank robbery, you need to know that it's federally insured. That's an element. I think that is true, Your Honor, because — Really? The getaway driver needs to know whether the FDIC seal is on the bank. I think that what Rosemont says is that you need to have knowledge as to all of the circumstances of the crime. And I think that can be read to say, yes, you have to have knowledge as to all of the elements, because in Rosemont itself, this is a court set. You have to have knowledge, advanced knowledge, about this armed defense element. So I think it requires knowledge of the specific crime. They rejected the notion that, you know, a crime is a crime. It has to be that crime. They may not require all the details, but you need to understand the basic concept of the crime. Why is it not enough? It's not enough, Your Honor, because Roberts, again, provides the contrast, direct contrast with Rosemont. You have to have general knowledge of the crime in Rosemont. That's true. But what you don't have to have is knowledge of all of the elements of the crime. I want to circle back briefly to the — Well, it seems like the FDIC thing, a lot of prosecutors, we've had cases where they didn't even know they had to prove that, and then they lose on insufficiency of the evidence. Asking that defendants know that and betters know that just seems absurd. I don't think it's absurd, Your Honor. And actually, if you look at — But you have to go to law school and check all the elements before you hook on as an aider and abetter, even though you're going to do a robbery. I don't think it's absurd, Your Honor. And I think actually Ordon does have a line that addresses this point. In footnote 3 of the decision, the court says, you know, the court acknowledges sometimes maybe there isn't a whole lot of daylight between knowledge and purpose. But in footnote 3, the court says, well, there is thought to be a difference for certain crimes that are thought to require a heightened amount of scrutiny. And those are encoded crimes, crimes where it's always a little less clear if someone's culpable or not. So we apply this higher burden of proof. Let me ask you this. Does the three-judge panel's decision mean that a noncitizen living in Arizona who is convicted of burglary can be removed for having committed that crime, while a noncitizen living in Washington who commits the exact same crime is not removable? Are you asking for a rule that we're going to have different results in different states? Well, Your Honor, I think that is what the categorical approach ultimately requires. The categorical approach asks, what's the least amount of the acts criminalized in this particular state? But then you have to hook in the aid and abetting, even though it's not in the statute there. You have to hook in the aid and abetting to prevail in that argument. Certainly, Your Honor, because Duenas-Alvarez requires this court to do so. If I don't think that Duenas-Alvarez does require that, if I think you're overstating it, then I'm not with you. Right. So I have to accept your reading of Duenas-Alvarez, correct? I think that's true that Your Honor has to accept Duenas-Alvarez and our reading of it to get to follow the logic. Right? But Duenas-Alvarez says that, you know, after holding that part of effort or the decision holds that theft in Section 1101A43G of the INA includes theft or includes aid and abetting liability. So what that means, the court then explains, is that the criminal activities of aiders and abettors must themselves fall within the scope of the term theft in the statute. That's a direct quote from the decision. I want to ask about Rosamond. That relates to Section 2, correct, of the federal law? That's correct, Your Honor, yes. Just as an abstract, is Section 2 the right benchmark when we're comparing the Washington statute? Aren't we supposed to compare to the generic? That's exactly right, Your Honor, and that's, of course, what the Supreme Court did in Duenas-Alvarez. Now, what 18 U.S.C. 2 says and requires is instructive for that, but so is the laws of nearly all other states in the country, which also require specific intent. So what in Rosamond, going back to that, there's a hypothetical given. I think it's like you have an owner of a gun store who sells a firearm to a criminal, they say, but they know but don't care how the gun will be used. So then the court goes on to say in a footnote, but we're not going to tell you or decide, as they often do, as to whether this would suffice to establish liability under Section 2. So who would make that footnote? I'm not sure, Your Honor, but I think it might suggest that if something like that were possible in Washington State, which under the lower mens rea requirement I think could be the case, then that's an example of how Washington might be overbroad as compared to federal accomplice liability. I think it also suggests that Rosamond is requiring more than knowledge, right? Again, to go back to that broader point, it's not to show specific intent in Rosamond. You need advanced knowledge. That advanced knowledge has to be to all of the circumstances of the crime. It's not this general knowledge requirement from Washington. So if the federal law could be instructive, but it's not controlling, is that your position? Correct, yes. And so in terms of how to analyze this, do we look to the generic definition first? Yes, the court should look to the generic definition of aiding and abetting liability because that's encompassed within generic theft. That was the holding of Duane E. Salvarez. And, of course, the Supreme Court demonstrated that by going on in Duane E. Salvarez to analyze whether California's accomplice liability was overbroad compared to generic accomplice liability. So I think that, too, underscores the point that the comparison here is to the generic term and that the inquiry that the court has to undertake is a comparison of the state offense to the generic definition of the offense. Where does the model penal code come in? Because they have, like, four different categories of intent or state of mind. Does that factor in to figure out what is the generic definition? Yes. So in decisions like the 1990 Taylor decision, which is different from the Taylor decision, it's just this past term, the Supreme Court said you look to the model penal code to define a generic offense. I think it did the same in Esquivel-Quintana from 2017. And the model penal code notably requires specific intent. And I think this point is instructive because Washington adopted lots of the model penal code when it overhauled its laws in the 70s, but it didn't adopt this portion of the model penal code. It deliberately parted ways and said, nope, we're going to include that. Excuse me. We're going to require this lower mens rea for accomplices. So I think that only underscores a difference with many other states that also amended their laws at the same time, but required this higher mens rea. I want to return now to the point about relying on the mismatch in elements alone, because I've cited the Taylor case and the Borden case. But, you know, the Supreme Court has repeatedly made clear that the mismatch in elements is alone. That's true, too, from the Mathis, Decomp, and Mullooly cases. All three of those cases are instances in which this. Crystal, I'm going to pressure you back on a question that I asked earlier. I don't think I got an answer to it. Okay. This seems like a good place for me to interject it one more time, and that is why in this case when we don't have an adjective, we don't have an add-on here. We don't have an armed robbery. We just have simple robbery. And why in this case is there a mismatch? There is a mismatch because the knowledge doesn't have to be to that add-on. Or it could be to another element. That's the point I'm trying to make. What element here? I think that's what I'm struggling with, too. What element here? You've given some examples of other elements that may be different. What element in robbery is different here between an accomplice and a principal? Well, I think in theory it could be any of the elements. Now, having said that, I want to briefly refer Your Honor again to the O. N. case because it's a theft of a firearm case, but it's not an add-on case, right? And there wasn't knowledge as to the firearm element. But your client wasn't convicted of robbery of a firearm. No, he was not. But to Your Honor's point there, Duenas-Alvarez confronted a similar situation, right? Duenas-Alvarez, that issue was a car theft offense, right? But to look at whether California's accomplice liability doctrine was overbroad, the Supreme Court looked at murder cases, robbery cases, sexual assault cases, kidnapping cases. And, of course, that makes sense, right? Because accomplice liability isn't something that just applies to one type of offense, right? It applies across a state's criminal code. So I think the Supreme Court's mode of analysis there is highly instructive to how this court, too. When we adopt your theory, do we need to overrule Amaya and Doar? I don't think so, Your Honor. But does that make everything other than the situations that limit a number of cases in Amaya and Doar, does it make all the rest of Washington's convictions out the door for immigration purposes? So I think it's going to still depend on the case sometimes, Your Honor. It's certainly going to render certain offenses overbroad. What offenses wouldn't be covered? So, for example, potential crimes of moral turpitude. My client is still facing those charges in the proceedings below. The rationale here doesn't necessarily implicate or make overbroad, I think, all crimes of moral turpitude. So folks are still going to face grounds of removability. That's an alternate ground for under the immigration laws. But doesn't your theory throw out everything other than crimes of violence under Amaya and Doar? I think what it would throw out is things like theft and burglary, Your Honor. But, again, first of all, crimes of violence aren't going to be implicated. At least I don't think the rationale here. Right, at least in terms of being considered an aggravated felony. If we adopt your theory, there's no felony in Washington that would qualify as an aggravated felony for immigration purposes, correct? So I think, Your Honor, that that is true if the underlying offense is a Washington offense. There may be other alternate grounds for removability, but there's no such. In Washington, if we accept your theory, there's no felony that can qualify as an aggravated felony for immigration purposes. I think an important caveat to that is the crime of violence definition, right? Because it's such a frequently charged ground for removability that implicates a lot of crimes. There's just no aggravated felony anymore in Washington if we adopt your theory. Now, there are alternate grounds, crime of violence and crimes of moral turpitude, but that's not my question. At the end of the day, Your Honor, I agree that this doesn't implicate just the robbery ground. It would implicate things like the burglary grounds of removability as well. But Washington also attaches liability under the same statute to those who solicit, who command, and those who encourage. So are we in the next – if we agree with you in the next case, are we going to have to be doing comparisons of, you know, what their law and incitement is and on solicitation and on, you know, procuring an offense and see whether those are categorical matches to some federal concept of those doctrines? So I think theoretically, Your Honor, yes, someone could raise an argument that the actus reus portion, right, of aiding and abetting liability – because there's usually two components, right? The mens rea and the act that's required too. And so I think theoretically someone could raise an argument about overbreadth. We're certainly not doing that here. The mens rea alone is what we're relying on. But I think it is possible. And, in fact, the 11th Circuit in a follow-up decision to its sports office decision did just that. It defined generic accomplice liability. And the argument there was that, oh, well, in Georgia, these offenses are overbroad because you can do acts that are less than what federal law requires. And the 11th Circuit rejected that argument. But I think it shows that other courts are already engaging in that same analysis. The ultimate federal inquiry is whether the alien is convicted of an aggravated felony. And the aggravated felony here has to be a theft offense. Now this theft offense qualifies as a categorical match. And he's convicted of a theft offense. If you look at what his conviction document says, it's for this offense, which is a categorical match. Where is there any hint in the statute that we're supposed to look at the details of these kinds of background doctrines of accomplice liability or solicitation that federal integration law is trying to carve out distinctions based on this? I don't see it in those words. Well, Your Honor, it's required because of what Duane E. Zalvarez said. Duane E. Zalvarez said theft in the statute includes aiding and abetting liability. And in effect, the Supreme Court— He said that as a matter of defining the federal one. So that federal law incorporates the same background assumption that everyone has. But does it say that we then have to, in looking at whether there is a categorical match for a theft offense, that we have to assess the details of every state's aiding and abetting liability doctrine? I think that is what Duane E. Zalvarez requires, Your Honor. Because they undertook the inquiry and then rejected it. But the fact that they undertook the inquiry didn't necessarily mean it was required to do so. I disagree with that, Your Honor. I think because the court says, holds, that the criminal activities of aiders and abettors must themselves fall within the scope of the term theft, and then it goes and looks at California case law, comparing it to the case law of other states to define the generic definition, is an example of what Your Honor is suggesting and shows that that is, in fact, how the inquiry must proceed in cases like this. But Duane E. Zalvarez, it was right in the statute itself that they were comparing, right? That's true, Your Honor. As opposed to a separate, in Washington you just have an aider and abettor statute, that it goes to all of them, right? That's exactly right, Your Honor. But notably, when the Supreme Court held that you can be convicted of principal liability as an accomplice in every state, it cited Washington in its Appendix A as an example of a state that's just like California, right? That where accomplice liability is always included in every charge. And, in fact, in our briefing we cite cases that say that in Washington, when someone is charged, accomplice liability is always a theory. The prosecution can rely on that truth. But they don't necessarily always have it as like a jury. If it was actually in the case, you'd have it as a jury instruction, but it's not always a jury instruction, right, in every case? It's not. It's very abusing if it was a jury instruction, and in some cases, like this one, where. So, I mean, to say it's part of every case, in one sense it is, but in a real practical sense, it's not. It's true, Your Honor, that in some cases, perhaps the prosecution is not going to ask for an accomplice liability instruction. In every case, there's no evidence that he's anything other than a principal. I agree, Your Honor. If you ask, as a trial judge, if you ask me for that instruction, I'd go, where's the beef? Where's the evidence? I agree, Your Honor, that in this case, the records don't reflect that my client was convicted as an accomplice. But the same is true in Duane E. Albright's, right? And there, once again, the Supreme Court said, you still have to look at whether accomplice liability is the least of the acts criminalized. And if that's the case, then it renders the statute overbroad. So I think that answers all of these inquiries about whether you have to look to Washington accomplice liability or not. The Supreme Court's decision in Duane E. Albright's should end that inquiry. Did you want to reserve any of your time? Oh, I did, Your Honor. Thank you. I'll reserve the last three minutes. Thank you. Good morning, Your Honors. May it please the Court, my name is Andrew McLaughlin and I represent the Respondent Attorney General of the United States on this case. There are many areas of this case where Mr. Alford and the government agree, one of which is the centrality of the Duane E. Albright's decision. Duane E. Albright's was a petition for a new case. It addressed aiding and abetting, and it addressed an aggravated felony question, the application of aiding and abetting in an aggravated felony application. However, the result that we come to from Duane E. Albright's is diametrically different. Duane E. Albright's set a very clear rule. Here we have a statute that has accomplice liability in it, so they addressed the peculiar difference that had been raised by the petitioner on the case. But at the end they said, in the end, our rule is very simple for the courts. Our guidance to the courts is very simple. Unless the petitioner can show you a case from the state involved, involving this statute, this statute of conviction involved, not the accomplice liability statute, there's no reason to even examine accomplice liability. We don't go there. It's not to be considered. So the two rules you take out of it is, if the statute includes accomplice liability, you may have to look at that. You may have to. But what I want to ask you, though, that was before our M-Bank case in Brussels, correct? That is correct. So in Brussels we specifically, because I disagree with how you read Duane E. Albright's, but in Brussels we very clearly said that this realistic probability standard can be satisfied either by a mismatch or the case. So are you asking us to overrule that M-Bank decision? I don't think we have enough available to us to ask you to overrule that categorical overbreadth holding of this court yet, although it's building and there's some evidence that it should be. However, in this case, looking at Duane S. Albright's, what you can clearly say is, when aiding and abetting is involved, there's only one rule. That is, either the prisoner's case or another case from the state involving the statute of conviction has to show that the state prosecutes for conduct that is not within the generic definition, would not cover, that the other states or the federal government would not prosecute for. And there's not a single case that can be cited here where the conduct involved wouldn't support conviction under either concept, either knowledge or intent. The problem I have is that we're looking at an M-Bank case that specifically distinguishes Duane S. Albright's and tells us that we have these two options, which is not an uncommon way to go about deciding overbreadth. So it's not like the Ninth Circuit stepped out and adopted some extraordinary standard. We had this two-part way in which you could dispatch the statute. So if there's a clear mismatch of knowing there's a specific intent, I'm having trouble understanding why that doesn't show you a facial overbreadth. I would point you to the Supreme Court's most recent Taylor decision and its Moncrief decision in which it specifically gave examples where the elements of an offense would be a mismatch. That is, the federal statute included an exception for antique firearms and the state statute in the example would not. And it said, look, the solution to this is Duane S. Albright. There has to be an example. Now that suggests that the- I actually think Taylor doesn't help you on this Cursel point because what it says is in Duane S. Albright's the elements of the relevant state and federal offenses clearly overlapped. And the only question the court was faced was whether the state courts also applied the statute. So Duane S. Albright's made its comment about you have to come up with an example against the assumption that they overlapped, which Grisel is the opposite. So I'm not sure that it is what- And the rule that was set in Taylor, and this is why I'm not advocating that Grisel be- that this and Bancorp attempt to overturn Grisel at this point. We don't- I can't make that strongly enough for you. But I can tell you that Taylor said in this case there is no overlap, whereas in Duane S. Albright's there was substantial overlap. And that's the- that's- there seems to be a delta in between that, and I don't have something that explains what to do about that except for the Moncrief decision, which specifically cited an example where there was a clear element mismatch, and the solution was the fact that the advocate of the mismatch had to show an example where somebody had prosecuted for that distinction. Would you get- it seems to me in the end it kind of boils down to whether the basic elements of generic aiding and abetting, which require this specific intent, is that different than the knowledge in the Winston statute? Yeah, that's- And there may be some no daylight, there may be a little daylight. That would be the- I think that's the ultimate because the government and the- The first- The other side basically have said, well, the case kind of went down the wrong path initially, and we're now kind of coming back to where we both agree kind of what's the- what is the playing field that we're trying to litigate on? And I think it does come down to this question, so I'd appreciate your comments on that. That would be our secondary argument. Let me add in advance of that, there is nothing anywhere that says that you compare generic aiding and abetting to the aiding and abetting statutes of the case. There is nothing. No Supreme Court case, no example, nothing anywhere. Aiding and abetting is not a conviction. Aiding and abetting is a theory under which we hold people liable for, as a principle, to a substantive statute. You always apply aiding and abetting through the statute of conviction. So we're never comparing the statutory aiding and abetting in the state to the generic aiding and abetting. Never. It doesn't happen. It's not- So what are you comparing here with the- You have to show the examples of the application of the state of aiding and abetting and the generic state's application of aiding and abetting to the statute of conviction and the generic statute to which you're comparing. So what about their argument that, in certain circumstances, aiding and abetting under Washington law is a mismatch as applied? There is no such case. Now let me explain it to you. Well, it seems like they've cited some cases where, you know, you didn't have to know the elements of the crime that were being committed for accomplice liability. The great news is that Washington courts are actually using the language from their statute. Absolutely clear. They're using the word knowledge. And they're saying that knowledge is not necessarily the same as intent, and knowledge is what we use in this case. However, the same Washington courts are also pointing out that there's something more in this aiding and abetting concept that suggests knowledge. It involves knowledge that precedes, and it involves knowledge that you enter into facilitating an aiding and abetting. There's an intent element. There's something that shows intent. And all of these cases actually show that intent. They either specifically say a reasonable fact finder could find intent under these exact same circumstances, or if you look at the cases themselves, they support that result. In each of these very cases, you find the result that if you look at it in the terms that Rosamond uses, and that the generic, Rosamond actually refers to it both specifically with respect to Title 18, aiding and abetting, and it appears to refer more broadly to generic aiding and abetting, too. It's hard to tell whether it's, because the whole thing, Rosamond, involved Title 18. Did Bersakis correctly interpret Rosamond in characterizing the Washington aiding and abetting standard, and if so, how should that impact our analysis? Bersakis is correct, and it applied. I would say Bersakis is incorrect in that it didn't observe that the standard for generic aiding and abetting is, in fact, probably a little broader than the federal Title 18 standard. But since the federal standard is clearly within the generic definition of aiding and abetting, Bersakis didn't reach the wrong result as a result. I think Bersakis made the same error that Valdez de Flores did in simply going to Title 18 without observing that it was using Title 18 as a subset of proxy for the generic definition. Isn't Bersakis also wrong in your view in that it looked at aiding and abetting at all? Yes. So if we were to follow Bersakis and reject what you described as your primary argument, that we don't look at aiding and abetting at all, is there any practical difference in your view in where we would end up if we were to do that as opposed to what you're urging? I'm not sure. Are you asking? J.D., you said your primary submission is that we shouldn't look at Washington aiding and abetting law at all. If, instead, we were to say we do look at that, but we agree with Bersakis that it's not really broader than generic aiding and abetting. That's right. Is there any practical difference in where we would end up having done that than if we were to do what you're urging? Your Honor, I believe it's a mischaracterization of joint itself, or is this clear on the part that you don't do that? And this actually came up in the oral argument. Justice Ginsburg said, do we even get to the question of aiding and abetting? And the answer she received was, well, because in this case it's in the statute, we think you have to. And so they didn't say this in the opinion, but that seems to be what they went after in this. But this actually goes, your question and Judge McEwen's are essentially similar. When you look at the applications of this case, the government wins either way. The government wins. Your response, you know, and it makes clear in footnote 8, that it's resting what it says about aiding and abetting on the assumption that it's limited to active participation. And Bersakis makes the same assumption that Washington law follows that active participation. Where does that come from from Washington? I couldn't find any statement like that in the Washington cases. It's limited. And, in fact, the Washington pattern instruction defines aid as all assistance, whether given by words, act, encouragement, support, or presence. And doesn't seem to have the kind of limitation that Rosemont put in that footnote. When you look at the, at this question of whether the conduct of, in aiding, what conduct is involved, and is, would a reasonable fact finder find intent as well as knowledge from that conduct, the application is identical. Plus, you have cases like Barrington is an example of a case that said, well, aiding and abetting in Washington requires more than just mere knowledge. So it's telling you, and it refers back to the Davis and Roberts and this concept that facilitating the crime, once you have that full knowledge. Supplying utility service to the mobster's house is not aiding and abetting in Washington, even though you know, you know that it's facilitating the criminal activity. In that, and this is, this actually came up in the Duenas-Alvarez argument, this sort of thing came up in the Duenas-Alvarez argument. And that's why Duenas-Alvarez said, you don't go there. You don't need to go there at all, unless it is showing that this statute is applied. The normal way we deal with the utility as aid or abetter problem is either you have a very narrow concept of what participation is required, or you have a specific intent requirement. So I'm saying if Washington has knowledge, and it's not clear that it has the active participation, does Washington aiding and abetting, you know, cover the Uber driver who shows up at the mobster's house? The answer is it's theoretically possible if you isolate the term knowledge and you isolate the intent to prosecute on that ground. But there's not a single example of Washington ever doing that. Why, what do you make of the fact that Washington very clearly deviated from the model penal code on this issue? And so it's one of this handful of states that has knowledge versus specific intent. Honestly, I can't cite you to a source that tells you, tells why this is, but my answer is right there in Rosemont. Rosemont cites a whole series of cases that held that for the purposes of aiding and abetting, the intent is satisfied by this sort of knowledge. So Washington. The footnote kind of goes to great lengths to basically say, in opposition to how you construed, that Rosemont didn't really decide whether Section 2 incorporated a mental state that was somewhere less than specific intent. So it seems like Rosemont says to us, we're not going there, but you say it went there. And that's why I'm having this disconnect. The footnote seems quite clear, as the Supreme Court often does. It's like a carve-out. It's like a little email to the circuits. Well, we haven't decided this. We'll leave it to you. Yeah, Rosemont left this question of, and it's the hypothetical possibility that Petitioner cites of an indifferent aider. That's somebody who actually aids, knowing the circumstances, but is indifferent to the actual success of the, and Rosemont left that aside. The Supreme Court didn't do it. Selvers didn't. They said, you have to show us a case in order to get to this point. But I. Okay. So you say we have, would you agree, from your perspective, Valdivia and Flores has to be overruled? Yes, Your Honor. All right. But you're saying nothing else has to be. But if, like you're saying, never get to comparing the aiding and abetting, does that then put us in a circuit split with the 11th? Because they'd get to the aiding and abetting and say they're the same, right? But you said you'd agree with if you ultimately get there. So I'm trying to. I believe you're correct. If you reach this conclusion that aiding and abetting is never considered based on what a solver is, that is inconsistent with the top-level conclusion that the 11th Circuit reached. Input sockets. Input sockets. It is not inconsistent with the holding of the case. But I thought we agreed that Section 2 is not necessarily the correct comparator here. It is. And then it was for a different reason in Valdivia. So why do we even need to get to an overruling in Valdivia? I'm not sure why. Valdivia and Port Saucas were considering the aggravated felony definition of drug trafficking crime in the INA. So I don't see how those two are at all the same. But was Section 2 a correct comparator? It was not a correct comparator as a rule. That is, you don't compare the two. So that's for starters. It's not a rule. Right. And it does make the text-only argument that Petitioner is making here easier if you have two texts to look at. But I would point out that specific intent is not in Section 2 either. But as a general rule, it is a misstatement to say that Section 2 is the correct comparison. Section 2 is clearly within generic. But we're not really clear about how far beyond that, under what doctrines the generic, for instance, is the natural and probable consequences doctrines incorporated somehow into generic, where it certainly doesn't appear on the face of Section 2. We haven't really fleshed that out yet. So our contention is that it's okay to use Section 2 to indicate that there's no measurable difference between the two. It's informative, but it's not. But it's not actually the correct comparison. So then another kind of issue that was raised is this is terrible if we have to compare statute by statute, state by state. But you would agree that's really the situation Congress put us in, isn't it, with the immigration statute, is that we have to go back to the conviction. We have to go back to the stated conviction. Then we have to go back to the crime at conviction. And you could get all kinds of different results for different people in different states, right? And no general rules. And no general rules. I mean, it's just sort of one of the hazards of having to do statute by statute. So I would point out that that's the Supreme Court's holding about what Congress did. We did not argue for that in favor of the Supreme Court. No, I haven't. Thank you. And in other circumstances, the Supreme Court has narrowed that in various ways to say, oh, that's not part of the categorical, or that's a jurisdictional element, or, you know, that there have been some other ways that the Supreme Court has reeled back on that holding in some ways. But the practical reality is that we're still going state by state statute by statute. As many of you have observed in opinions, this is really hard. This is really hard. So would there ever be, in Washington, would there ever be anything that would qualify if we say that you have to compare the aider and abettors to the federal? Could there ever be an aggravated felony there? Yes, Your Honor. The Washington statute is broader than petitioner represents, and the generic definition is equally broad, and there's no measurable differences, no significant differences, no substantial differences. No, it's just so that I understand what you want us to do is first you want us to overrule Valdivia Flores, and you want us to say that we don't compare the aider and abettors. That's correct. Even if we did compare the aider and abettors, you still win. Is that what you're saying? That is correct, Your Honor. And that Versack has correctly interpreted Rosemond? That's correct, Your Honor. What about Indore and Amaya? Indore. The three judge panels of our court rejected the argument that because every Washington criminal statute incorporates accomplice liability, all Washington criminal statutes are overbroad, and, therefore, all Washington convictions fail to qualify as crimes of violence. Petitioner here says that this rejection shows the potential impact of our ruling, and Valdivia Flores and Alfred is limited. What's your response to that? I believe Amaya has to go. Amaya followed Valdivia Flores letter for letter, and, therefore, it has to go. Indore, however, although it recognized that Valdivia Flores was out there, Indore doesn't have to be overruled because it reached the right result. It found a different exception. But I would say, you know, to the extent, it's going to be an aspiration on Indore because the language that led up to its ultimate, the exception that made for enumerated offenses is wrong. So is there any way you can win and avoid a split with the 11th? Well, we can fix the 11th. What's on that? Because I think it goes to some of this questioning, the question that Judge Miller was asking. So the 11th, so you say there are errors that they should not have gotten to and compared the two. They should have. But your gateway that keeps you from, your argument to us, your gateway is that it's sort of funny because your gateway is basically you kind of compare the two, but you're saying you do it by looking at whether there's a case. It's sort of, and I think you're saying that you, it's sort of the burden is on the challenger, the defendant to make that, to sort of show that case. And I guess that would be your gateway. If they don't show that case and you never open the door, I mean, you could almost kind of have that same position, though, if you did go through the door and then you say they just haven't made the case. And it doesn't, because your gateway is kind of close to the analysis that the 11th Circuit did when they actually did the analysis, that's where I think maybe this is what Judge Miller said. But it doesn't seem like there's a huge amount of difference between the two positions. So technically, maybe there's a little different way of approaching it. So I've got two questions. Comment on that. Like, is there actually that much difference? But secondly, is there any other gateway? Like, one gateway could be just one statute had, one statute, the Duane Acevedo case had it in the statute, had the compass liability. Here, we don't. And so that's one. I mean, I think you have a footnote or something that sort of mentions that. But it seems like the government in its supplemental briefing doesn't really want that to be, or isn't really arguing for that to be the gateway that decides whether or not we address that. So is there any other gateway that would mean we don't address it other than your main gateway, which is, as I understand it, you actually do kind of do a comparison, the same thing you would kind of do if you got to that question. You do a comparison, but you just put the burden on the plaintiff to show a case that shows that they're different. We haven't come up with a gateway, as you refer to it, another gateway that covers this. The fact is that the only competitor is the statute of conviction and the generic defense that corresponds to the statute of conviction. However, if the statute of conviction includes a compass liability, we have a little bit of difficulty arguing that there's a distinction there. So I can't come up, our basic position is that the statute of conviction governs. It's only the statute of conviction you look at, and that's all you need to look at. But the question is, when the statute of conviction includes a compass liability, is there any way to draw that out? In the case of Bortsockets and Valdivie Flores, it was the same statute. So, I mean. It may also have been relevant that it was in the same statute, but I'm trying to think of what is your argument on that? Does it make a difference that it was in the same statute or not? The central argument that we were attempting to make in the brief, in the merits brief to this court, is that all of this overlooks the requirement that the Supreme Court imposed in Duenes-Alvarez for a showing, and that that didn't happen in this case. That it never happened in this case. So that was the central argument we were trying to reflect, and we were adding in the footnote, this is not to say that the statute in Duenes-Alvarez wasn't distinct in the way that it included the, it actually included a compass liability. We're telling you that. What if Washington loops it in, in every case? Every state loops it in, in every case. The federal government loops it in in every case. But then the distinction goes out of difference. I mean, you're trying to. No, Your Honor. The statute of conviction is the only thing that counts. Can I ask it maybe in a different way? I think this is what we're talking about. You argued that this case is distinguishable from Duenes-Alvarez. Is that correct? Because there is a state statute that explicitly included aiders and abandoners in that case. That is the only. Duenes-Alvarez wasn't about methodology. It didn't really go into methodology. But in Duenes-Alvarez, they did actually look at natural and probable consequences. They didn't look at the elements or the definition under the statute. But they did look at the argument that had been proposed to make it different. So. But Duenes also said that every state that has abrogated, that every state has abrogated the distinction between aiders and abandoners and principles. Correct. Meaning it seems like that every state statute implicitly includes aiders and abandoners. So I'm trying to figure out why are these two concepts different. Because they're not the statute of conviction. So is it just a matter of whether, I mean, if you have one state that has statutes defining different offenses and each of those says war as an accomplice, and you have another state that just has offenses defined in separate statutes and then separately there's a statute that says every statute includes war as an accomplice, why would we look at those two differently just because it's in the same, just based on the difference of whether it's in the same section or not? Honestly, Your Honor, the rule in Duenes-Alvarez is what the court concluded. The court concluded that you don't even go there unless there's a showing made. Okay? That's the ultimate rule. So the question then becomes why did Duenes-Alvarez examine natural and probable consequences without even going through any kind of comparison of aiding and abetting statutes or generic aiding and abetting or any of those things? The answer is in this statute, as came up in oral argument, in this statute the words were there. So the Supreme Court felt obliged and the government invited them, asked them, both parties invited them to address that, you know, and this argument seems a little bit odd to me at least, what I keep calling your gateway, is if, let's say, tomorrow Washington Supreme Court comes out with a case and now you can no longer make that argument because they really have gone differently than the generic. We still would have the oddity that in this case there's absolutely no accomplice. There's nothing to indicate this has anything to do with the accomplice. I think under your argument at that point now the government would lose. Am I right in thinking that? This is a problem in the way the Supreme Court has written the categorical approach analysis. So what I keep calling your gateway is just not particularly satisfying to me because it seems, I understand your argument, but it's not particularly satisfying. It is not particularly satisfying. It seems like a weird way to be designing these cases, but you're saying the whole thing is weird. And it is fairly clear that Congress had nothing like that in mind. It is definitely clear that Congress had no intent for immigration judges to have to wander off into these mini trials about what to do in this situation. But because the Supreme Court held that the categorical approach applies in the same way to both, we're kind of stuck with it at the moment. You argue, if I understand this correctly, that accomplice liability is not relevant to the categorical approach where the petitioner acted alone. Is that what you're arguing, or you just don't think it applies? It's the focus. I don't recall saying anything about the petitioner acting alone, but you're not arguing that the modified categorical approach could apply in this at all, are you? No, we are not, either. Do you agree that we're supposed to consider the minimum conduct that could result in conviction? Absolutely, and this is an example of why this gets, because accomplice liability is so inherently muddled and confusing in itself, as we've discussed, overlaying accomplice liability onto the statute of conviction and then onto all of the generic comparable statutes to figure out what the generic offense plus being accomplice liability applied to it gets incredibly muddled. And what Justice Breyer did in doing his office is establish a rule that prevented that. It said you don't need to go there. Don't bother. Thank you, and if there's any other questions, your time is up. Thank you very much. Your Honor, at the end of the day, what I want to leave you first with is that there is a clear mismatch between Roberts and Rosemond in response to the question about, well, what about these cases that we've cited like Davis, like Randall, like Oweng, which are clear contrasts with Rosemond? The government didn't have a response, and those cases show that in Washington you don't have to have specific knowledge of all of the elements of the crime. That is what Rosemond requires. Rosemond says you need knowledge as to all of the circumstances of the crime, and that has to be advanced knowledge. Now, turning to Bortzakis, Bortzakis didn't acknowledge this. I don't think Bortzakis acknowledged that knowledge has to be advanced knowledge, nor did Bortzakis address the Roberts case, which, again, is the foundational case in Washington on the mens rea required for accomplice liability in Washington. So I think that what Bortzakis does wrong is essentially set up the wrong standard for what accomplice liability is in Washington, and that's why it gets it wrong. Now, it also doesn't address cases like Davis, like Randall, like ALY, like Oweng. And I think that's likely the result of the fact that those cases weren't raised. We can't fault the 11th Circuit for that, but they demonstrate overbreadth in the state of Washington. Briefly, too, I want to address the government that a couple times said, well, there's not substantial overlap here, or there's no significant difference. Well, the categorical approach demands a complete match. And I want to underscore, too, that Taylor, again, just this term, rejected this exact same argument from the government that if it's close enough, that's enough for the categorical approach. In Taylor, the Supreme Court or the government argued, well, attempted Hobbs Act robbery is usually associated with a communicated threat of force, so that's enough. And Justice Gorsuch said, nope, that's not the categorical approach. You always have to have a complete match. So this idea, which Bortzakis hints at, too, is simply inconsistent with Supreme Court. It's a complete match of aiding and abetting in second-degree robbery. Your Honor, I think it's just. It's a yes or no, probably. No, because accomplice liability applies across the state doctrine, so the court can't just look to second-degree robbery cases. And, of course, Duenas-Alvarez didn't do that when it was analyzing whether the car theft provision and its accomplice liability was overbroad. It looked across state case law in order to determine whether the accomplice liability doctrine in California, that was at issue there, was overbroad compared to the generic definition. I'd like to go into a response then to Ms. McLaughlin's position that Justice Breyer in the Duenas-Alvarez case basically said, well, the only way you can show this is through a case. Two responses to that, Your Honor. First, if that's what Duenas-Alvarez is actually saying, then most of the opinion is meaningless because the Supreme Court, at length, analyzes California accomplice liability through all these different statutes versus the generic definition. And the second response to it, Your Honor, is that that's inconsistent with cases like Taylor v. Justice Durham or Mathis v. Borden, all of which just rely on the mismatch in elements alone. Thank you very much. I appreciate the oral argument presentations here today by both counsel. The case of McKenzie v. Albright v. Merrick Garland is now submitted and we're adjourned. Thank you. All rise. This court for this session stands adjourned. Thank you.
judges: MURGUIA, THOMAS, McKEOWN, BYBEE, CALLAHAN, NELSON, MILLER, BADE, COLLINS, LEE, VANDYKE